**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Dayton LeBAR, Appellant.**

Superior Court of Pennsylvania.

Submitted March 15, 2004.

Oct. 20, 2004.

Dayton LeBar, appellant, Pro Se.

Elmer D. Christine, Jr., Assistant District Attorney, Stroudsburg, for Commonwealth, appellee.

Before: STEVENS, TAMILIA, and JOHNSON, JJ.

OPINION BY JOHNSON, J.:

¶ 1 Dayton LeBar challenges *pro se* the trial court's denial of his Motion to Compel Monroe County Clerk of Court (Clerk) and Pennsylvania Department of Corrections (DOC) to Return Monies Collected in Violation of 42 Pa.C.S.A. § 9728. He argues that the absence of any provision in his sentencing order imposing court costs precluded the Department of Corrections from deducting such costs from his inmate account. He also argues that the trial court lacked authority to issue an order putatively imposing, or recognizing the imposition of such costs more than two years after his sentencing order was entered. For the reasons that follow, we affirm in part, reverse in part, and remand.

¶ 2 The relevant facts appear not to be in dispute. On June 13, 2001, LeBar pleaded guilty to Sexual Assault, Endangering the Welfare of Children, and Statutory Sexual Assault. In a contemporaneous sentencing order, the trial court, President Judge Ronald E. Vican, sentenced LeBar to five to ten years' imprisonment for Sexual Assault; five to ten years' imprisonment for Statutory Sexual Assault, sentence to run consecutively to the term of imprisonment for Sexual Assault; and one and a half to five years' imprisonment for Endangering the Welfare of Children, sentence to run concurrently with the other two sentences. Thus, LeBar was sentenced to an aggregate term of ten to twenty years' imprisonment in a state correctional institution, and directed to comply with the registration provisions of Megan's Law.

¶ 3 The only mention of any restitution applicable as a consequence of LeBar's sentence reads as follows, under the statement of the term of imprisonment for Sexual Assault: "[LeBar shall] make restitution to the victim in this offense, if any is required." Sentencing Order, 6/13/01, at 1. The June 13 order made no mention whatsoever of the imposition of any court or prosecution costs or other fees on LeBar.

¶ 4 In August 2001, the Clerk notified DOC that LeBar had been ordered to pay court costs of $466.00 at his June 13 sentencing. That same month, DOC informed LeBar that they would deduct twenty percent of all LeBar's monthly income to satisfy those costs under authority of Act 84, 42 Pa.C.S. § 9728.

¶ 5 On March 7, 2003, LeBar filed a *pro se* Motion to Cease and Desist Collection of Court Costs, Restitution, and/or Fines. Therein he argued that the lack of authorization of any such collection of costs precluded DOC's action under Act 84 and

applicable caselaw. Judge Vican's responsive Order warrants full reproduction, insofar as it wholly concurred with LeBar's assertions, yet denied him relief:

AND NOW, this 1st day of April 2003, after review of Defendant's *Pro se* Motion to Cease and Desist Collection of Court Costs, Restitution and/or Fines, we make the following determination: ***the sentencing order dated June 13, 2001 imposes no fines or costs.*** It does, however, include language that Defendant "make restitution to the victim in this offense, if any is required." The Monroe County Probation Department has informed the court that no restitution is required. Accordingly, we determine that Defendant is not entitled to the relief requested and Defendant's Motion is DENIED.

Order, 4/1/03 (emphasis added). Thus, according to the trial court, LeBar is not "entitled" to relief precisely because the putative order authorizing the deductions from his account does not exist—which, of course, is the basis of LeBar's argument. Thus, in one paragraph, the trial court accepts LeBar's premise (that LeBar *never owed any money due to his conviction*) but denies his conclusion (that LeBar thus is entitled to restitution of the $466.00 improperly deducted from his personal inmate account).

¶ 6 On April 9, LeBar filed an Inmate Request enclosing a copy of the April 1 Order and his original Sentencing Order, and requesting "that all monies collected from [his] account be returned ... as soon as possible." A staff member replied as follows: "I contacted the Clerk of Courts and the Probation Department Collection Department. They believe your order 4/1/03 stating you do not have fines and costs is in error. They are checking with the Judge to see if it needs corrected [*sic*]." Inmate's Request to Staff Member,

4/9/03, ¶ 9 (Response, 4/10/03). In response to a follow-up request, the same Staff Member replied "The Court hasn't had enough time yet for a new order or to completely review your case. * * * * As I said before, in talking with the Clerk of Courts, court costs are always your obligation even if it's not stated in the order." Inmate's Request to Staff Member, 4/21/03, ¶ 9 (Response, 4/23/03). Over a month later, evidently after receiving no further reply, LeBar once again inquired as to why, absent a court order authorizing such action, DOC had deducted $466.00 from his account. This time, the same Staff Member responded: "Your questions should be forwarded to *inmate accounting.* Our office doesn't deal with this." Inmate's Request to Staff Member, 5/28/03, ¶ 9 (Response, 5/30/03). When LeBar contacted Inmate Accounts with the same complaint, another staff member replied that she had talked with "Susan from Monroe county," and continued, "Obviously, you owed the money. Therefore any further questions concerning this issue are to be directed to Monroe County. Refund denied." Inmate's Request to Staff Member, 6/2/03 (Attached Response, 6/3/03). To the same end, we find in the certified record a letter addressed to one George J. Warden, Clerk of Courts for Monroe County, painstakingly setting forth the tortured path LeBar had followed in attempting to reclaim monies that, by the court's own admission in its April 1, 2003 Order, he never owed, and observing that the Clerk of Courts himself lacked authority to impose costs in the first instance or require DOC to collect such costs according to an installment plan. Letter to George J. Warden, addressed 6/5/03, filed with Clerk of Courts Monroe County 6/11/03, at 1–2 (unnumbered). The record contains no indication that Mr. Warden or his office responded to LeBar's inquiry.

¶ 7 On August 1, 2003, LeBar finally returned directly to the Court of Common Pleas of Monroe County and filed his Motion To Compel Monroe County Clerk of Court and Pennsylvania Department of Corrections to Return Monies Collected in Violation of 42 Pa.C.S. § 9728 (Motion to Compel), Judge Vican's denial of which we now find before us. LeBar's Motion to Compel repeated his earlier arguments regarding the lack of an order assessing him any costs with his conviction, Judge Vican's own April 1 Order acknowledging the absence of such order, and DOC's collection of $466.00 notwithstanding this deficiency.

¶ 8 In response to LeBar's Motion to Compel, Judge Vican issued an order that stated, in apparent contradiction of his April 1 Order:

> After review of the record and the Clerk of Court Statement of Costs, it appears that the directive to pay costs of proceeding was inadvertently omitted from the Sentencing Order dated June 13, 2001. Inasmuch as the costs are statutory in nature, Defendant's motion seeking return of monies collected is **DENIED**.

Order, 8/22/03.

¶ 9 LeBar subsequently filed a notice of appeal and the trial court ordered LeBar to file a Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P.1925(b). LeBar complied, raising seven questions directed solely at the various missteps manifest in the above sequence of events. The trial court then filed its Statement Pursuant to Pa.R.A.P.1925(a) (T.C.O., 9/30/03). Once again, the trial court acknowledged the lack of imposition of fines and costs. T.C.O., 9/30/03, ¶ 2. It also noted that the court "did not impose fines; and no restitution was required." T.C.O., 9/30/03, ¶ 4. It then concluded its discus-

sion of LeBar's seven questions with the following assertion:

5. Apparently, the Department of Corrections deducted from Defendant's inmate account certain monies on account of court costs, which are statutory in nature.

6. Inasmuch as the costs are statutory in nature, this court, by Order dated August 22, 2003, denied Defendant's motion seeking return of monies collected.

T.C.O., 9/30/03. As in its August 22 Order, Judge Vican failed to cite any Pennsylvania statute authorizing a Clerk of Courts to seek reimbursement for costs that are not even mentioned in the pertinent sentencing order or any other order of court.

¶ 10 On appeal to this Court from the trial court's denial of his Motion to Compel, LeBar raises the following questions *pro se:*

1. WAS THE ORDER OF THE COURT OF COMMON PLEAS FOR MONROE COUNTY IN FACT ILLEGAL AS A MATTER OF LAW HAVING MODIFIED THE ORIGINAL SENTENCING ORDER MORE THAN THIRTY DAYS AFTER THE DATE OF THE ORIGINAL SENTENCING ORDER?

2. CAN THE DEPARTMENT OF CORRECTIONS, AS AN ADMINISTRATIVE AGENCY, BE GIVEN AUTHORITY TO DEDUCT MONIES FROM AN INMATE'S ACCOUNT WITHOUT AUTHORIZATION BY THE INMATE OR COURT ORDER?

3. DID THE TRIAL COURT ERR, AS A MATTER OF LAW, BY NOT HOLDING A HEARING ON DEFENDANT'S ABILITY TO PAY FINES, COURT COSTS, OR RESTITUTION, PRIOR TO ENTER-

ING AN ORDER FOR COLLECTION OF SAID COURT COSTS?

4. DID THE CLERK OF COURTS ERR WHEN THEY, SUA-SPONTE, REQUESTED THE DEPARTMENT OF CORRECTIONS TO DEDUCT MONIES FROM DEFENDANT'S ACCOUNT WITHOUT AN ORDER FROM THE PRESIDENT JUDGE?

Brief for Appellant at 6 (immaterial corrections added). Faced with a question of law, our standard of review limits us to determining whether the trial court committed an error of law; our scope of review is plenary. *See Kmonk–Sullivan v. State Farm Mut. Auto. Ins. Co.,* 746 A.2d 1118, 1120 (Pa.Super.1999).

¶ 11 LeBar's questions 2 and 4 accurately aver that there was *never* an order of court authorizing any collection of court costs, fines, costs of prosecution, restitution, or any other pecuniary assessment against LeBar as an aspect of his sentence or otherwise. Thus, we need not reach questions 1 and 3, which concern the proper implementation of such an order should it have issued in any form. Moreover, questions 2 and 4 in effect assert the same basic flaw in the above-detailed proceedings, thus we treat those questions as one.

¶ 12 LeBar asserts a violation of his due process rights under the Fourteenth Amendment, under both Commonwealth and Third Circuit precedent, in that he was not afforded adequate constitutional protection of his inmate account. Brief for Appellant at 13–16. We need not go so far. Indeed, we need look no further than the language of Act 84, which provides the "procedural mechanism for the collection of court costs and fines." *Harding v. Stickman,* 823 A.2d 1110, 1112 (Pa. Cmwlth.2003). The Act vests authority in DOC to collect on court-assessed costs,

fines, and restitution. *See* 42 Pa.C.S. § 9728(b)(5). What, on its plain language, Act 84 most assuredly does *not* do, is vest in the clerks of courts of the counties of this Commonwealth the fundamentally judicial authority to assess costs in the first instance against parties where costs have not been explicitly provided for in that party's sentencing order. Indeed, the section permitting DOC to collect court-ordered costs could not be more clear on this point: "The county correctional facility to which the offender has been sentenced or the Department of Corrections shall be authorized to make monetary deductions from inmate personal accounts for the purpose of collecting restitution *or any other court-ordered obligation.*" 42 Pa.C.S. § 9728(b)(5) (emphasis added); *see Boyd v. Pennsylvania Dep't of Corr.*, 831 A.2d 779, 783 (Pa.Cmwlth.2003) ("[T]he Department [of Corrections] is authorized to make monetary deductions from an inmate's personal account for the purposes of collecting restitution, as well as fines and costs, *which were imposed by the sentencing court* ...."); *see also Commonwealth v. Larsen*, 452 Pa.Super. 508, 682 A.2d 783, 794–95 (1996) (discussing generally the ways in which a *court order* sentencing a party to costs may be followed within thirty days by a *court order* setting such costs, which in turn would, *by court order*, "give the sentencing cost substance and enforcement perimeters to allow the collection agent for the court to act timely").

¶ 13 Restitution plainly not being involved in this case, Order; 4/1/03 ("The Monroe County Probation Department has informed the court that no restitution is required."), the only money DOC might collect from LeBar's personal inmate account under § 9728 must be a "court-ordered obligation"—something strikingly absent not only from the original sentencing order, but also absent from every or-

der Judge Vican has entered in this case since. Even Judge Vican's most recent order, the denial of relief presently before us, merely observed that the directive to pay costs was "inadvertently omitted from" the sentencing order of June 13, 2001, and averred that such costs "are statutory in nature," yet failed again affirmatively to order the clerk of courts to seek such costs, or to confirm that such already had been received, properly or otherwise, from DOC.

¶ 14 This does not end our inquiry, however; the Commonwealth has directed our attention to a statute the trial court might have referred to when it summarily described court costs as "statutory in nature." Specifically, the Commonwealth asserts that 18 P.S. § 11.1101 authorizes all of the costs DOC collected from LeBar in this case. Relevantly, that section provides as follows:

**§ 11.1101. Costs**

(a) Imposition.

(1) A person who pleads guilty or nolo contendere or who is convicted of a crime shall, in addition to costs imposed under 42 Pa.C.S. § 3571(c) (relating to Commonwealth portion of fines, etc.), pay costs of at least $60 and may be sentenced to pay additional costs in an amount up to the statutory maximum monetary penalty for the offense committed.

\* \* \* \* \* \*

(c) Payment. This cost shall be imposed notwithstanding any statutory provision to the contrary.

\* \* \* \* \* \*

(e) Court order. No court order shall be necessary in order for the defendant to incur liability for costs under this section. Costs under this sec-

tion must be paid in order for the defendant to be eligible for probation, parole or accelerated rehabilitative disposition.

18 P.S. § 11.1101. Our research discloses no cases interpreting this statutory provision, thus we must rely on the statute's plain language to determine whether and how it applies to LeBar's case. *See* 1 Pa.C.S. § 1903(a) ("Words and phrases shall be construed according to rules of grammar and according to their common and approved usage . . . .").

¶ 15 The Commonwealth would have us rule that § 11.1101(a) validates all of the fines charged to LeBar, and that § 11.1101(e) authorizes the method of collection implemented in this case notwithstanding the lack of a court order imposing those costs. We disagree. Section 11.1101 unequivocally imposes a $60 fee on LeBar, which we must uphold. To that extent, then, the costs imposed were indeed "statutory in nature," and to that extent only we affirm the trial court's order sustaining DOC's collection of fees from LeBar. With regard to the balance of monies collected from LeBar, however, we note that § 11.1101(a)(1) contains language susceptible to the same analysis we applied to 42 Pa.C.S. § 9728. As in that section, § 11.1101 provides that a person who pleads guilty "shall . . . pay costs of at least $60 *and may be sentenced to pay additional costs in an amount up to the statutory maximum monetary penalty for the offense committed.*" 18 P.S. § 11.1101(a)(1) (emphasis added). As in § 9728, the statute recognizes that the sentencing court *may* in its discretion impose costs up to the relevant statutory maximum; beyond the mandatory $60 assessment, however, § 11.1101 is not self-executing but rather requires a "sentence" in the same way that § 9728 requires a court order. Based on our analysis above, and our brief discussion to follow, we find

that the trial court neither sentenced nor validly ordered imposition of any costs, fees, or restitution. Consequently LeBar is responsible only for the mandatory $60 assessment provided in 18 P.S. § 11.1101.

¶ 16 Although we do not read the order before us to make any attempt at altering the original sentencing order, even if that were Judge Vican's intent he would be acting outside his authority to modify his sentencing order over two years after it issued. "Trial courts have the power to alter or modify a criminal sentence within thirty days after entry, if no appeal is taken. 42 Pa.C.S.A. § 5505. Generally, once the thirty-day period is over, the trial court loses the power to alter its orders." *Commonwealth v. Walters*, 814 A.2d 253, 255–56 (Pa.Super.2002) (some citations omitted). A trial court may, however, act outside its thirty-day window to correct a patent or obvious mistake in a sentence, or in case of fraud "or another circumstance so grave or compelling as to constitute extraordinary cause[ ]." *Id.* at 256 (internal quotation marks omitted). Aside from the $60 assessment automatically arising by operation of 18 P.S. § 11.1101, neither Judge Vican, the Commonwealth, nor our own review of the record reveals any indication that Judge Vican's failure originally to impose court costs or other costs of prosecution against LeBar, a power that lies wholly in his discretion as sentencing judge, constituted a patent mistake or extraordinary circumstance, or arose due to anyone's fraud. Consequently, at the expiration of thirty days following LeBar's sentencing, Judge Vican lost power to modify LeBar's sentence under the circumstance at bar.

¶ 17 Thus, we have no choice but to enforce the original sentencing order, which imposed neither costs nor fines on

LeBar. Of course, consistent with the above discussion, we find no impropriety in the collection of $60 from LeBar; as to the difference between this amount and the $466 actually collected, however, we find that DOC's collection was erroneous and must be remedied. Accordingly, we reverse Judge Vican's Order of August 22, 2003, denying LeBar relief from DOC's improper collection of monies from his inmate account except as to the $60 imposed by 18 P.S. § 11.1101, the collection of which we affirm. We remand this case with direction to the trial court to see to the restitution to Dayton W. LeBar's personal inmate account forthwith of the $406.00 DOC improperly collected and ostensibly forwarded to the Monroe County Court of Common Pleas.

¶ 18 Order **AFFIRMED** in part and **REVERSED** in part. Case **REMANDED** for proceedings consistent with this Opinion.